Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5900 | **DATE** | 7/15/2004 |
| **CASE TITLE** | Ballentine vs. Illinois State Police | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment [32-1] is granted. See attached. All pending motions and hearings are stricken. The Clerk shall enter judgment pursuant to Federal Rule of Civil Procedure 58.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 21 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 49 |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 2004 JUL 21 PM 1:55 U.S. DISTRICT COURT CLERK date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

| | | |
|---|---|---|
| JEWEL BALLENTINE, | ) | |
| | ) | No. 02 C 5900 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| ILLINOIS STATE POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Plaintiff, Jewel Ballentine ("Ballentine"), proceeding *pro se*, filed suit against Defendant, her employer, the Illinois State Police ("ISP"), alleging, *inter alia*, racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, Ballentine alleges that she was denied promotions and placed on a disability leave of absence based on her race and in retaliation for having signed a letter in February 1999 regarding allegations of discrimination at her place of employment. Before the court is ISP's Motion for Summary Judgment.

## I. BACKGROUND[1]

*A. Facts*

Ballentine, an African-American female, began her employment with the ISP in 1993. In 1996, the ISP opened the Forensic Science Center ("FSC") in Chicago, Illinois. The FSC performs

---

[1] Since Ballentine did not comply with Local Rule 56.1 and file a proper response to ISP's statement of undisputed facts, the court accepts as true all facts set forth in ISP's Local Rule 56.1 statement. See N. D. Ill. Local Rule 56.1 (b)(3)(B); see also Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 870 n. 3 (7th Cir. 2000). The court still must view the facts in the light most favorable to Ballentine, the non-moving party. See Fed. R. Civ. P. 56(c).

analysis and storage of physical evidence for use in criminal investigations and prosecutions for state law enforcement agencies. Ballentine was transferred to the FSC shortly after its opening, and assumed the position of Office Coordinator within the Evidence Control Center of the FSC. As an Office Coordinator, Ballentine's job duties were primarily clerical. In 1999, Ballentine was granted an internal transfer to the Administrative Bureau of the FSC. Within the Administrative Bureau, Ballentine's job duties remained primarily clerical. Specifically, Ballentine greeted employees, law enforcement officers and visitors who came to the FSC's administrative area. At all times relevant to this case, Ballentine's direct supervisor was Scott Jensen, Deputy Laboratory Director of the FSC ("Deputy Director Jensen"). Deputy Director Jensen reported to James Kearney, Laboratory Director of the FSC ("Director Kearney").

In February 1999, Ballentine and another employee, Rochelle Massengale, signed a letter addressed to ISP Director Sam Nolen, raising allegations of discrimination in the handling of personnel at the FSC. ISP did not ignore Ballentine's letter. ISP conducted an investigation and later assigned Master Sergeant Odell Thompson to the FSC to ensure that proper procedures were followed with respect to personnel issues.

The gravamen of Ballentine's Complaint is that she was denied promotions and placed on a disability leave of absence based on her race and in retaliation for having signed the February 1999 letter regarding allegations of discrimination at the FSC. ISP responds that Ballentine was not qualified for the promotions she sought and was placed on a disability leave of absence because of instances of disorderly conduct, insubordination, and a documented history of emotional outbursts in the workplace that caused conflicts with her co-workers and supervisors and disrupted the workplace.

Ballentine asserts that she was qualified for and should have received promotions for three separate positions: (1) Account Technician I, (2) Account Technician II, and (3) Office Administrator IV. However, the undisputed evidence in this case indicates that Ballentine had a documented history of emotional outbursts in the Forensic Science Center offices that caused conflicts with her co-workers and supervisors and disrupted the workplace, which resulted in the ISP finding that Ballentine was not qualified for promotion.

In late 1999 and early 2000, Ballentine had a number of performance-related problems. The first problem, which occurred in late 1999 or early 2000, was a statement Ballentine made while standing with a group of people near the reception desk at the FSC. Specifically, at that time, Ballentine remarked about "going postal."[2] Certain employees who had heard the comment perceived it as a threat, and an investigation ensued. The statement was documented in a memo written by Master Sergeant Thompson and sent to Director Kearney. A second problem was a heated argument Ballentine had with another co-worker, Carolyn Merrill, which occurred on March 3, 2000. Immediately after the argument, Deputy Director Jensen summoned Ballentine into his office to discuss the matter. Director Kearney was also present for this meeting. During this meeting, Ballentine interjected other issues that she was dissatisfied with, including temporary pay and the

---

[2] The term "going postal" is a euphemism for becoming stressed out or becoming extremely angry, and usually carries an implication of completely irrational behavior, often violent. See RandomHouse.com available at http://www.randomhouse.com/wotd/index.pperl?. The etymology of the term refers to several highly publicized incidents where postal workers went on murderous rampages. See id. The threat of workplace violence was in the forefront of the news in 1999. See, e.g., Multiple Shootings in 1999, CNN.com, November 2, 1999 available at http://www.cnn.com/US/9911/02/multiple.shootings.02/ (documenting certain highly publicized deadly shootings at workplaces, schools and religious buildings that occurred during 1999).

location of her desk. According to Director Kearney and Deputy Director Jensen, Ballentine conducted herself in an inappropriate manner by becoming emotional, crying and raising her voice to her supervisors. As a result, Ballentine was ordered to complete a counseling program, the Career Enhancement Program ("CEP"). In addition, her conduct during that meeting resulted in an internal investigation, which culminated in charges of disorderly conduct and insubordination.

From April 4 through April 9, 2000, Ballentine attended the CEP counseling program. Thereafter, Ballentine returned to work. Subsequently, Ballentine was informed that she would not be considered for promotion at that time due to her performance-related problems. On June 16, 2000, Director Kearney sent a letter to Ballentine stating that her performance in her current position would be evaluated for a 60 day period before being considered for a promotion. However, the situation did not improve, and ISP had greater concerns with Ballentine's performance.

On August 16, 2000, Ballentine received a letter from ISP Deputy Director Teresa M. Kettlekamp, instructing her to take a fitness for duty examination. The letter stated that based on the aforementioned performance-related problems, Ballentine was to submit to an evaluation by Dr. Cherry Weber. Following the examination on August 18, 2000, Dr. Weber opined that Ballentine was not fit for duty. On September 5, 2000, Ballentine received another letter from ISP Deputy Director Teresa M. Kettlekamp, recommending that she take a disability leave of absence and seek psychiatric counseling. The letter also stated that after a medical professional had declared her fit to return to work, her employment status would be re-evaluated. On September 7, 2000, Ballentine received a letter from Director Kearney, informing her that she was being placed on administrative leave with pay pending her decision to apply for a disability leave of absence. The letter also advised Ballentine that if she did not apply for a disability leave of absence she would remain on

administrative leave until further notice. Ballentine did not apply for a disability leave of absence, and she received her full salary until December 2000.

Shortly thereafter, Ballentine independently made an appointment to meet with Dr. Thomas Yun. Dr. Yun opined that Ballentine was fit for duty, but had an inability to cope with work-related stress. In light of Dr. Yun's opinion, Ballentine sought to have the ISP re-evaluate her in order to return to work. In response, the ISP sent Ballentine a list of doctors with whom she could submit to a third examination to determine her fitness for duty. Ballentine selected Dr. Daniel O'Grady. She met with him on January 3, 2001. Ballentine participated in only portions of Dr. O'Grady's examination, and he ultimately agreed with Dr. Weber's opinion that Ballentine was not fit for duty.

Ballentine's employment status and the opinions of Drs. Weber and O'Grady were reviewed by the ISP Medical Review Board, which recommended that she be placed on a non-service connected disability leave of absence. On February 21, 2001, ISP Director Sam Nolen sent a letter to Ballentine indicating that the Medical Review Board's decision was adopted. To date, Ballentine remains on non-service connected disability leave of absence without pay.

## B. *Procedural Framework*

Shortly before being placed on a non-service connected disability leave of absence, on December 5, 2000, Ballentine filed a charge of discrimination against ISP with the Illinois Department of Human Rights. In that charge, Ballentine raised four issues: (1) failure to promote based on racial discrimination in April 2000, (2) retaliatory failure to promote in April 2000 based on writing the February 1999 letter regarding allegations of discrimination at the FSC, (3) placement on administrative leave based on perceived mental handicap, and (4) retaliatory placement on administrative leave based on writing the February 1999 letter regarding allegations of

5

discrimination at the FSC. On August 19, 2002, shortly after receiving a Notice of Right to Sue letter, Ballentine filed a *pro se* lawsuit against the ISP in federal district court. Specifically, Ballentine alleged that the ISP discriminated against her based on the following: (1) her gender and race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); (2) her race under 42 U.S.C. § 1981; and (3) a perceived disability under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"). See Pl.'s Compl. Additionally, Ballentine alleged that the State committed other civil rights violations under 42 U.S.C. § 1983. See id.

Thereafter, the ISP filed a motion to dismiss Ballentine's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In its motion, the ISP argued that Ballentine's Complaint should dismissed because: (1) the court lacks jurisdiction over Ballentine's Title VII claims of gender discrimination because Ballentine failed to raise a claim of gender discrimination in her prior charge filed with the Illinois Department of Human Rights; (2) the State is entitled to Eleventh Amendment immunity on Ballentine's ADA claim; and (3) Ballentine's § 1983 claims are untimely and improper. The ISP also requested that the court strike Ballentine's prayer for punitive damages because it is a governmental agency.

The court granted in part and denied in part the ISP's motion to dismiss. See Minute Order of May 29, 2003 [16-1]. The court granted the ISP's motion to dismiss Ballentine's ADA claim and prayer for punitive damages. See id. In that minute order, the court also indicated that it was "difficult to discern the thrust of Ballentine's Title VII sex discrimination claims and her § 1983 claims." See id. Thus, the court ordered Ballentine to file a more definite statement pursuant to Fed. R. Civ. P. 12(e) by June 21, 2003. See id.

One month beyond the court-ordered deadline, on July 20, 2003, Ballentine filed a pleading

styled, "Response to Judge Norgle Ruling of 5/29/2003 Requesting Pro Se Plaintiff for a More Definite Statement Pursuant to Rule 12(e)." See Pl.'s Submission [17-1]. Upon reviewing Ballentine's July 20 submission, the court entered judgment for the ISP to the extent that Ballentine was seeking damages against the Illinois State Police pursuant to 42 U.S.C. § 1983. See Minute Order of Nov. 26, 2003 [26-1] (citing Endres v. Indiana State Police, 349 F.3d 922, 924 (7th Cir. 2003)). The court allowed Ballentine to proceed to litigate her remaining claims of gender and racial discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.[3] Ballentine has abandoned her gender discrimination claim, and only the racial discrimination claim remains before the court.

In response to the remaining racial discrimination claim, the ISP has filed a motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. In compliance with Northern District of Illinois Local Rule 56.2, the ISP sent a Notice to Pro Se Litigant Opposing Motion for Summary Judgment to Ballentine. The Motion for Summary Judgment is now fully briefed and before the court.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden to prove that no genuine issue of material fact

---

[3] A claim under § 1981 includes the same elements and employs the same analysis and methods of proof as a Title VII claim. See, e.g., Johnson v. City of Fort Wayne, 91 F.3d 922, 940 (7th Cir. 1996). Therefore, the court will address Ballentine's Title VII and § 1981 claims jointly.

7

exists. See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

The non-moving party cannot rest on the pleadings alone, but must identify specific facts that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Fed. R. Civ. P. 56(e). "Conclusory allegations alone cannot defeat a motion for summary judgment." See Thomas v. Christ Hosp. and Medical Center, 328 F.3d 890, 893-94 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

Local Rule 56.1 requires both the moving and non-moving parties to submit a statement of material facts, including "specific references to the affidavits, parts of the record, and other supporting materials relied upon." See N. D. Ill. Local Rule 56.1(a)(3) and (b)(3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." See N. D. Ill. Local Rule 56.1 (b)(3)(B); see also Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (Castillo, J.) (discussing non-moving party's burden in opposition to summary judgment under Local Rule 56.1).

The court views the record evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make a "choice of inferences." See Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).

## III. DISCUSSION

Ballentine presents the court with a failure to promote claim and a retaliation claim. As discussed below, Ballentine fails to provide sufficient evidence of either claim to withstand the ISP's motion for summary judgment.

### A. *Standard of Decision*

In this discriminatory failure to promote and retaliation case, Ballentine presents no direct evidence of discrimination. Thus, in order to defeat the ISP's motion for summary judgment, Ballentine may use the burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the burden-shifting method, Ballentine can raise an inference of discrimination or retaliation by offering evidence sufficient to establish a *prima facie* case. See McDonnell Douglas, 411 U.S. at 802-05. To establish a *prima facie* case of discrimination in a failure to promote case, Ballentine must show: (1) she is a member of a protected group; (2) she was performing her job satisfactorily; (3) she was rejected for the position; and (4) the employee promoted to the position was not a member of the protected group and was not better qualified for the position. See Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004); Johnson v. Nordstrom, Inc., 260 F.3d 727, 732 (7th Cir. 2001). Similarly, to establish a *prima facie* case of retaliation, Ballentine must show: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. See id. at 508; Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002).

9

If Ballentine can establish the elements of a *prima facie* case, the burden shifts to the ISP to articulate a legitimate, nondiscriminatory reason for the decision. See id. at 504, 508. Once the ISP presents a legitimate, nondiscriminatory reason for the adverse action (failure to promote or retaliation), Ballentine must present evidence that the ISP's reason is pretextual. See id. To demonstrate that the articulated reason for the adverse action is a pretext, Ballentine must eliminate the articulated reasons for the employment action as possible reasons by showing that the proffered explanation is a lie. See Wade v. Lerner New York, Inc., 243 F.3d 319, 323 (7th Cir. 2001). Ballentine can meet this burden by presenting "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the [decision] in question, or were insufficient to motivate the [adverse employment action]." Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998).

### B. *Failure to Promote*

Ballentine satisfies the first and third elements of a *prima facie* case of discrimination in a failure to promote situation, since she is an African-American and she was rejected for promotions. However, Ballentine's attempts to establish a *prima facie* case end there. Ballentine has not shown that she was performing her job satisfactorily. Further, Ballentine has not shown that an employee promoted to the position was not a member of the protected group and was not better qualified for the position.

Ballentine argues that she had performed her job satisfactorily in the past, and indicates that she had received favorable performance reviews. This much is true; however, Ballentine fails to address the number of performance-related problems that occurred in late 1999 and early 2000. It

10

is undisputed that Ballentine had been charged with disorderly conduct, insubordination, and had a documented history of emotional outbursts in the Forensic Science Center offices that caused conflicts with her co-workers and supervisors and disrupted the workplace. The first performance-related problem was a statement Ballentine made while standing with a group of people near the reception desk at the FSC. Specifically, at that time, Ballentine made a statement about "going postal." Certain employees who had heard the comment perceived it as a threat, and an investigation ensued. The comment was documented in a memo created by Master Sergeant Thompson and sent to Director Kearney. A second performance-related problem was a heated argument Ballentine had with another co-worker, Carolyn Merrill, which occurred on March 3, 2000. Immediately after the argument, Deputy Director Jensen summoned Ballentine into his office to discuss the matter. Director Kearney was also present for this meeting. During this meeting, Ballentine interjected other issues that she was dissatisfied with, including temporary pay and the location of her desk. According to Director Kearney and Deputy Director Jensen, Ballentine conducted herself in an inappropriate manner by becoming emotional, crying and raising her voice to her supervisors. As a result, Ballentine was ordered to complete the CEP counseling program. In addition, her conduct during that meeting resulted in an internal investigation, which culminated in charges of disorderly conduct and insubordination. Based on these undisputed facts, Ballentine cannot establish a *prima facie* case of discriminatory failure to promote on account of race. The evidence indicates that the ISP did not promote Ballentine due to her performance-related problems, not due to her race. See Bean v. Wisconsin Bell, Inc., 366 F.3d 451, 453 (7th Cir. 2004) (holding that employee's Title VII claim failed because employer's termination was justified given employee's insubordination towards supervisor); Merheb v. Illinois State Toll Highway Authority, 267 F.3d 710 (7th Cir. 2001) (holding

that employee's Title VII claim failed because employer's termination was justified given employee's threatening behavior towards supervisor).

Further, Ballentine has not shown that an employee promoted to the position was not a member of the protected group and was not better qualified for the position. The record is left devoid with regard to who got the positions that Ballentine wanted. As the Seventh Circuit has indicated: "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003) (citing Schacht v. Wis. Dep't. of Corrections, 175 F.3d 497, 504 (7th Cir. 1999)). Ballentine has not established a *prima face* case of discriminatory failure to promote.

Additionally, even if Ballentine had established a *prima facie* case, her failure to promote claim nevertheless would fail because the ISP has articulated a legitimate, nondiscriminatory reason for the decision not to promote Ballentine. The unrebutted evidence in this case shows that Ballentine was not performing her job satisfactorily, based on the charges of disorderly conduct, insubordination, and a documented history of her emotional outbursts while on the job that caused conflicts with her co-workers and supervisors and disrupted the workplace. Particularly within the context of the ISP's Forensic Science Center, "[a]n employer is likely to treat insubordination more harshly than most other forms of employee misconduct, regardless of race, because of the threat to workplace discipline." Bean, 366 F.3d at 453. Additionally, Ballentine's problems rose to such a degree as to require her to submit to a fitness for duty examination with a psychiatrist, Dr. Weber, who opined that Ballentine was not fit for duty. Additional examinations supported that conclusion and formed the basis for ISP's decisions. The Seventh Circuit has repeatedly reiterated that courts

12

"do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." See, e.g., Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). Furthermore, viewing the evidence in the light most favorable to Ballentine, there is no evidence that the failure to promote her was motivated by racial animus. The evidence shows that Ballentine was not promoted due to her insubordination and because she was unfit for duty. As with her *prima facie* case, Ballentine has failed to proffer any evidence that the ISP's articulated reason is pretextual.

## C. Retaliation

Similarly, Ballentine satisfies the first element of a *prima facie* case of retaliation, since she engaged in a statutorily protected activity by writing the February 1999 letter regarding allegations of discrimination at the FSC. However, Ballentine's attempts to establish a *prima facie* case end there.

As discussed above, the unrebutted evidence in this case shows that Ballentine was not performing her job satisfactorily, based on the charges of disorderly conduct, insubordination, and the documented history of her emotional outbursts at work that caused conflicts with her co-workers and supervisors and disrupted the workplace. As an initial matter, the Seventh Circuit has stated: "We have consistently held that an employee's insubordination toward supervisors and coworkers, even when engaged in protected activity, is justification for [adverse employment action]." Kahn v. United States Secretary of Labor, 64 F.3d 271, 279 (7th Cir. 1995). Further, the ISP's decision to place Ballentine on a non-service connected disability leave of absence was based on an examination with a psychiatrist, Dr. Weber, who opined that Ballentine was not fit for duty. The decision was supported by other medical professionals and reviewed by the ISP Medical Review

Board. As such, Ballentine cannot establish a *prima facie* case of retaliation. Further, Ballentine has failed to proffer any evidence that the ISP's articulated reason is pretextual.

Therefore, the ISP has shown, on the basis of record evidence, that no genuine issues of material fact exist that would warrant a trial in this case. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586.

## IV. CONCLUSION

For the foregoing reasons, ISP's Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56, is granted.

IT IS SO ORDERED

ENTER:

*/s/ Charles R. Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 7-15-04